## Montgomery *vs* Tilley and Sanders.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Attachment in Chancery.   Construction.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

CHANCERY.

*Case 50.*

*December 22.*

The allegations of the bill.—Demurrer thereto.

THE *Chancellor* having sustained a demurrer to an attachment bill, filed by *Samuel Montgomery* against *Paul C. Tilley* and *John T. Sanders*, for enforcing a debt, (due from the latter to the former,) by attaching their Steam Boat *Angora*, then about to start from *Louisville* for some port beyond the limits of this state, the only question presented for revision is, whether the allegation of *Tilley's* non-residence, or of the intended removal of the boat, exhibits a case contemplated either by the statute of 1837, (*Session acts,* 103,) or that of 1838, (*Ib.* 213.)

The third section of the latter act is in these words: "When any person or persons, who shall be indebted, "shall be about to remove his, her, or their property out "of the Commonwealth, or fraudulently intend to sell, "convey, or otherwise dispose of their lands, goods, "wares, merchandize, choses in action, or other proper- "ty, with the intent of cheating, hindering, delaying, or "defrauding creditors in collecting, their debts—the "courts of Chancery in this Commonwealth, shall have "power and jurisdiction, upon bill filed by any creditor, "whether the debt be or be not due, to attach the prop- "erty and arrest the removal or fraudulent sale or dispo- "sition of the property, and make all necessary orders "for the safety and forthcoming of the property, and, on "the establishment of the intent to remove the property, "or the fraudulent intent to sell or dispose of the prop- "erty, cause the same to be applied to the payment of "the debt."

MONTGOMERY
*vs*
TILLEY, &c.

It will be felt, at once, that this legislative enactment is involved in an ambiguity peculiarly vexatious. Whether the Legislature intended the removal of all or only a part of the debtor's property, or, if either all or a part, whether any portion, however small, or such only as would not leave enough for securing the debt, or whether it designed that the debtor's *intention to remove* his property, should alone be sufficient to give jurisdiction, or that such purpose, like that of selling or conveying, should be fraudulent *in fact,* or whether, if actual fraud be unnecessary, the removal should tend to the effect of defeating, delaying, or obstructing a creditor, are all questions to which different answers might be given by intelligent expositors.

The first general inquiry, suggested by the context, is whether the section just quoted should be construed as connecting "the intent of cheating, hindering, delaying, or defrauding creditors," with the removal of a debtor's property, as well as with the fraudulent purpose to convey or otherwise dispose of any portion of it. The collocation and literal import of the phraseology, and the fact that the "establishment of *the intent to remove,* or the *fraudulent* intent to sell or dispose" of (any of) the property, gives jurisdiction to a Chancellor to decree a sale of it for a debt not due, might, on a superficial consideration, incline to the conclusion that the intent is confined to the sale, conveyance, or other disposition, and does not apply to the simple removal.

But, considering the presumed objects of the enactment, analysing all its provisions, and harmonising the whole, so as to affect one consistent end, the deduction is strong that the intent to defraud, hinder, or delay creditors, was designed to apply both to the removal and the fraudulent sale, conveyance, or other disposition of property.

By the law in force when this section was enacted, a creditor about to bring an action for a debt due, might hold his debtor to bail by making affidavit that he would remove his property beyond the jurisdiction of the court, *so as to defeat any process that might be issued for enforcing the judgment, if one should be obtained.* The pre-

A bill for attachment, under the third section of the act of 1838, *Sess. Acts,* 213, (if a removal of property, by a citizen, is made the ground for attachment,) must allege that such removal *is with a fraudulent intent,* or that the effect thereof will be to cheat, hinder, delay, or defraud creditors in collecting their debts.

sumed object of the Legislature in enacting the third section of the act of 1838, was to extend the same remedy in equity, to debts due or not due, and to make the remedy operate *in rem*, in all cases of apprehended removal, or fraudulent disposition of a debtor's estate, so as either to defraud, hinder, or delay his creditor in the collection of his debt. It is but reasonable to presume that this was the only object. It would be altogether unreasonable to suppose that the Legislature intended that a debtor, whose debt is not due, should be subjected to a seisure and sale of any portion of his property, however small comparatively, only because he is about to remove that portion, in good faith, beyond the limits of this state, still leaving here more than enough for the undoubted satisfaction of all his debts. There could be no just or rational motive for such a vigorous and unprecedented enactment. But there was a strong, obvious, and consistent motive for providing such a remedy against any debtor who shall intend to remove from this state all his estate, or such a portion of it as, by such removal, to unreasonably hinder or delay any one of his creditors in enforcing the payment of his debt in this state. The hindering, delaying, or defrauding of creditors was the mischief, and the prescribed remedy must be reasonably interpreted so as to prevent that mischief merely: the just security of creditors was the only end of the enactment, and this purpose is, in our judgment, perfectly consistent with the whole style and tenor of the third section, when carefully considered: for when a debtor intends, however honestly in fact, to remove permanently from this commonwealth, (without first paying or securing his creditors here,) the whole of his estate, or such a portion of it as to prevent or unreasonably obstruct the coercive collection of the debts, by the process of any of our courts, in judgment of law, he intends either to defraud, hinder, or delay his creditors, because such a removal may, and probably will tend, unjustly, to some one of these consequences, and compel his creditors to seek their debts in a foreign country.

This enactment should, in our opinion, be read thus: "When any debtor shall be about to remove, or fraudu-

The temporary removol of a citizen of part of his property, out of the state, without the intent to cheat, hinder, delay, or defraud creditors, or the actual *effect* of *hindering or delaying,* will be produced by such removal, will not autorize the attachment.

"lently to sell, convey, or otherwise dispose of his prop-
"erty, or any portion thereof, with the intent or to the ef-
"fect of hindering or delaying any of his creditors, &c."

We are, moreover, of the opinion that the contempla-
ted removal, when it is without any injurious intent or ef-
fect in fact, must be a permanent one. Sending a slave
across the state line on an errand, expecting his return,
is not such a removal of property as that intended by the
statute. Nor, for the like reason, if a steam boat, em-
ployed in transportation between a port in this state and
another in a foreign state, shall be about to pass our ju-
risdictional border in that service, can such a purpose of
temporary removal subject the boat to the process provi-
ded by the statute, without regard to the *quo animo,* or
the actual effect, so far as creditors might be concerned.

We are therefore of the opinion that the alleged inten-
tion to remove the steam boat, in this case, was not suffi-
cient to give jurisdiction to the Chancellor, because the
bill makes no suggestion, either as to the motive or char-
acter of the removal, or the extent or value of the prop-
erty owned in this state by the owners of the boat, so as
to show that there is any cause to apprehend that the com-
plainant will be hindered or delayed in the collection of
his small debt, or that there was any intention to hinder
or delay any creditor.

Allegation of *non-residence* of debtors does, *prima facie,* authorize the attachment in ch'y against effects in the state.

But the alleged non-residence was sufficient, *prima fa-
cie,* to give the chancellor jurisdiction. And therefore, as
the demurrer admitted all the allegations of the bill, it
seems to this Court that, on this ground alone, the Chan-
cellor erred in sustaining the demurrer and dismissing the
bill.

Wherefore, the decree is reversed and the cause re-
manded.

*Field* for plaintiff.